## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.: _____

FRANKENMUTH MUTUAL INSURANCE
COMPANY,

     Plaintiff,

v.

PAC COMM, INC., a Florida corporation and
EMMANUEL E. PACIN, an individual,

     Defendants.

_____/

## COMPLAINT FOR DAMAGES,
## INJUNCTIVE AND OTHER EQUITABLE RELIEF

Plaintiff, FRANKENMUTH MUTUAL INSURANCE COMPANY ("FMIC"), by and through its undersigned counsel, hereby sues Defendants, PAC COMM, INC. ("PAC COMM") and EMMANUEL PACIN ("PACIN") (collectively, "INDEMNITORS"), and states as follows:

### INTRODUCTION

1.    This is an action for damages, for breach of an indemnity agreement. FMIC, as surety, issued payment and performance bonds on behalf of PAC COMM and in favor of several municipalities, guaranteeing PAC COMM's work on various construction projects. As a condition to the issuance of the Bonds, the INDEMNITORS executed the indemnity agreement in favor of FMIC. Under the indemnity agreement, the INDEMNITORS jointly and severally agreed, among other things, to indemnify FMIC from any loss or expense on the bonds.

2.    PAC COMM defaulted on the bonded construction contracts and FMIC received numerous claims under the payment and performance bonds. FMIC has been required to satisfy

CASE NO.: _____

claims under the bonds, and has incurred and continues to incur substantial loss adjustment expenses.

3.      Despite demand, none of the INDEMNITORS has complied with the obligations of the indemnity agreement.  As such, the INDEMNITORS are in material breach of their obligations under the indemnity agreement.  Accordingly, FMIC brings this action to enforce the indemnity agreement against them.

## PARTIES, JURISDICTION AND VENUE

4.      Subject matter jurisdiction is based upon 28 U.S.C. §1332(a)(1), diversity of citizenship.  The parties are citizens of different states and the amount in controversy exceeds the sum of Seventy-Five Thousand and 00/100 Dollars ($75,000.00), exclusive of costs, interest and attorney's fees.

5.      Plaintiff, FMIC, is a corporation organized and existing under the laws of the State of Michigan, with its principal place of business in Frankenmuth, Michigan who is otherwise authorized to do business within the State of Florida.

6.      Defendant, PAC COMM, is a corporation organized and existing under the laws of the State of Florida, whose principal place of business is located in North Miami Beach, Miami-Dade County, Florida.

7.      Defendant, PACIN, is an individual who resides in North Miami Beach, Miami-Dade County, Florida, and who is otherwise *sui juris*.

8.      Venue is proper in this Court because it is the situs where the legal obligation arose, where the corporate Defendant conducted business which gives rise to the instant claims, and where the individual Defendant resides.

9.      All conditions precedent to the filing of the instant action have occurred or have otherwise been waived.

CASE NO.: _____

## <u>GENERAL ALLEGATIONS</u>

**A.**     <u>The Bonded Contracts, Projects and *Bonds*</u>

10.     FMIC is engaged in the business of providing surety bonds.

11.     PAC COMM is a Florida-based heavy civil contracting company with a specialty in marine construction and pile driving.

12.     PAC COMM entered into various construction contracts with several municipalities requiring PAC COMM to obtain payment and performance bonds.  In connection with those construction contracts, FMIC issued the following Performance and Payment Bonds (collectively, the Bonds):

| <u>Obligee</u> | <u>Project</u> | <u>Bond</u> | <u>Penal Sum</u> |
|---|---|---|---|
| Miami-Dade County | Cruise Terminal J | SUR0001597 | $8,151,960.00 |
| City of Miami | Legion Park Seawall | SUR0002728 | $1,128,939.81 |
| City of Deerfield Beach | Recreational Artificial Reef | SUR0002657 | $  355,385.00 |

The Bonds are attached hereto and made a part hereof as **Composite Exhibits "A.1 through A.3"**

13.     As an inducement to, and in consideration for, issuing the Bonds, FMIC required the INDEMNITORS to execute the Indemnity Agreement", a true copy of which is attached hereto and made a part hereof as **Exhibit "B."**

14.     Pursuant to Articles 3 and 5 of the Indemnity Agreement, the INDEMNITORS, jointly and severally, agreed to exonerate, indemnify and hold harmless FMIC from any potential loss or expense associated with FMIC's issuance of the Bonds:

**Indemnification and Hold Harmless:** Indemnitors ***shall exonerate, indemnify and save Company harmless from and against all Loss***. An itemized, sworn statement by an employee of Company, or other evidence of payment, shall be prima facie evidence of the propriety, amount and existence of Indemnitors' liability.  Amounts due to Company shall be payable upon demand.

…***In addition to the foregoing, Indemnitors shall promptly, on Company's written demand, procure the full and complete discharge of Company from all Bonds demanded by Company and all liability in connection with such Bonds.***  If Indemnitors are unable to obtain such discharge within the time demanded, Indemnitors shall promptly deposit with Company an amount of money that Company determines is sufficient to collateralize or pay any outstanding bonded obligations, or otherwise make provisions acceptable to Company for the funding of the bonded obligations (Emphasis supplied).

For purposes of this Article, "Loss" is defined as follows:

**Loss**:  ***All loss, costs and expense of any kind or nature***, ***including attorneys' and other fees or costs***, which Company incurs in connection with any Bond, Contract or this Agreement, including but not limited to all loss, cost and expense incurred by reason of: (a) the underwriting or issuance of any Bond, (b) ***making any investigation in connection with any Bond***; (c) any claim, which means any notice, claim, demand, defense, counterclaim, setoff, lawsuit or proceeding or circumstance which may constitute, lead to or result in Loss, liability, or asserted liability in connection with any Bond or this Agreement, (d) any Indemnitor failing to timely and completely perform under or comply with this Agreement, (e) Company enforcing this Agreement, (f) Company ***prosecuting or defending any action in connection with any Bond***; (g) obtaining the release of any Bond; (h) Company ***recovering or attempting to recover Property in connection with any Bond or this Agreement***; (i) Company ***enforcing by litigation or otherwise any of the provisions of this Agreemen***t, (j) any act of Company to protect or procure any of the Company's rights, protect or preserve any of the Company's interests, or to avoid or lessen Company's liability or alleged liability, and (k) all interest accruing on any such amounts at the maximum legal rate. Indemnitor's liability to Company includes all Loss, all payments made, and all actions taken by Company under the Good Faith belief that Company is, would be or was liable for the Loss, the amounts paid or the actions taken or that it was necessary or expedient to incur such Loss, make such payments or take such actions, whether or not such liability, necessity or expediency existed. Good Faith means, with respect to any act, exercise of discretion or omission by Company, an absence of dishonesty, evil intent and actual malice toward Indemnitors.  An itemized statement of Loss, sworn to by any officer of Company, or vouchers, affidavits, or other evidence of

CASE NO.: _____

payment by Company, shall be prima facie evidence of Indemnitors' liability for such Loss (Emphasis supplied).

15.     Pursuant to Article 4 of the Indemnity Agreement, the INDEMNITORS agreed that

FMIC shall be entitled to reimbursement for all payments made in good faith:

> **Claim Settlement:**  Company shall have the **right, *in its sole discretion*, to determine for itself and Indemnitors whether any claim, demand or suit brought against Company or any Indemnitor in connection with, arising our of, or relating to any Bond or Contract shall be paid, compromised, settled, tried, defended or appealed**, and its determination shall be final, binding and conclusive upon the Indemnitors.  Company shall be entitled to immediate reimbursement for any and all Loss incurred under the belief it was necessary or expedient to make such payments (Emphasis added).

16.     Pursuant to Article 5 of the Indemnity Agreement, the INDEMNITORS agreed to

deposit with FMIC collateral security:

> **Collateral Security:**  *Indemnitors agree to deposit with Company*, upon demand, funds, other *collateral security acceptable to the Company, in an amount as determined by Company sufficient to discharge any Loss or anticipated Loss*.  Indemnitors further agree to deposit with Company, upon demand, an amount equal to the value of any assets or Contract funds improperly diverted by any Indemnitor.  Sums deposited with Company pursuant to this paragraph may be used by Company to pay such claim or to be held by Company as collateral security against any Loss or unpaid premium on any Bond.  Indemnitors agree that Company would suffer irreparable damage and would not have an adequate remedy at law if Indemnitors fail to comply with the provisions of this paragraph (Emphasis added).

17.     Pursuant to Article 7 of the Indemnity Agreement, the INDEMNITORS, jointly

and severally, agreed that "Company should be entitled to injunctive relief and/or specific

performance, and Indemnitors waive any claims or defenses to the contrary."

18.     Pursuant to Article 12 of the Indemnity Agreement, the INDEMNITORS, jointly

and severally, obligated themselves to provide such books, records and accounts as may be

requested by FMIC in connection with the claims against the Bonds, as well as related to the

instant indemnity demands:

**Books, Records and Credit:** Indemnitors *shall furnish upon demand*, and Company shall have the right of free access to, at reasonable times, the *records of Indemnitors including, but not limited to, books, papers, records, documents, contracts, reports, financial information, accounts and electronically stored information*, for the purpose of examining and copying them. Indemnitors expressly authorize Company to access their credit records, including, but not limited to, account numbers and/or account balances from financial institutions. (Emphasis added).

**B.** **Payment and Performance Bond Claims for Each Project**

**Miami-Dade County / Cruise Terminal J Repairs Project**

19. On or about October 11, 2018, PAC COMM, as contractor, entered into a written contract with Miami-Dade County to perform certain enunciated work on the project commonly known as "Cruise Terminal J Seawall Repairs" in Miami-Dade County, Florida (the "Terminal J Project").

20. On April 26, 2019, FMIC, as surety, issued a combined Surety Performance and Payment Bond, bearing no. SUR0001597, on behalf of PAC COMM, as principal, with Miami-Dade County, as obligee, on the Terminal J Project (the "Terminal J Bond"). A true and correct copy of the Terminal J Bond is attached hereto as **Exhibit "A.1"**.

21. On April 29, 2020, Miami-Dade County issued a notice to cure upon PAC COMM as a result of several performance deficiencies.

22. On June 1, 2020, Miami-Dade County declared PAC COMM in breach of the contract and issued its Notice of Termination for Default ("Notice of Termination") upon PAC COMM and made demand against the Terminal J Bond to complete the work remaining on the Terminal J Project. A true and correct copy of Miami-Dade County's Notice of Termination is attached hereto and made a part hereof as **Exhibit "C"**.

23. Miami-Dade County further identified unsatisfactory conditions in which PAC COMM had left the Project site, and made demand upon PAC and FMIC for, among other matters,

the removal of certain vessels (*i.e.*, 4 tugboats and 3 barges), stockpiled materials (*i.e.*, forms), construction debris and/or other property left at the Terminal J Project site.

24.     As a result of Miami-Dade County's claim, FMIC undertook an independent investigation into the default allegations to determine how best to proceed under the performance bond.  Based upon its investigation, FMIC has elected to enter into, and is in the process of finalizing, a tender agreement with Miami-Dade County, which contemplates the selected tender contractor to complete the remaining work under the bonded contract.  FMIC is facing potential liability under the Terminal J Bond in excess of $1,400,000.00.

25.     In addition to Miami-Dade County's claim, FMIC received claims under the Terminal J Bond from PAC COMM's unpaid subcontractors and/or suppliers in connection with the Terminal J Project.  Specifically, FMIC has received payment claims in excess of $800,000.00.

26.     FMIC has incurred and/or anticipates incurring significant financial losses and expenses as a result of having issued the Terminal J Bond on behalf of PAC COMM.

**City of Miami/Legion Park Seawall Project**

27.     On or about May 15, 2019, PAC COMM, as contractor, entered into a written contract with the City of Miami to perform certain enunciated work on the project commonly known as "Legion Park Seawall and Boat Ramp" in Miami, Florida ("Legion Park Seawall Project").

28.     On December 13, 2019, FMIC, as surety, issued separate Subcontract Payment Bond and Subcontract Performance Bond, each bearing bond no. SUR0002728 on behalf of PAC COMM, as principal, with City of Miami, as obligee, on the Legion Park Seawall Project (collectively, the "Legion Park Bonds").  True and correct copies of Legion Park Bonds are attached hereto as **Exhibit "A.2"**.

29.     On July 6, 2020, the City of Miami advised PAC COMM that it was not performing

work in a timely manner and required PAC COMM to provide adequate assurances of its ability to perform in accordance with the bonded contract.

30.    On July 7, 2020, the City of Miami requested that PAC COMM provide pending contract information/documentation and mobilize to the Legion Park Seawall Project site within 72 hours or the City of Miami would default terminate the bonded contract.

31.    On September 4, 2020, the City of Miami declared PAC COMM in breach of the bonded contract and issued its Notice of Contract Default upon PAC COMM for its refusal and/or failure to renew its certificate of insurance; provide documentation justifying force majeure; provide documentation relating to the theft incident and damage to the temporary trailer; and provide weekly reports advising of its ability to resume work.  The City of Miami requested that PAC COMM provide it (within 72 hours) with all documents requested and a plan of action to start work.  True and correct copy of Miami-Dade County's Notice of Contract Default is attached hereto and made a part hereof as **Exhibit "D"**.

32.    FMIC is facing potential liability and is incurring loss adjustment expenses as a result of having issued the Legion Park Bonds on behalf of PAC COMM.

**City of Deerfield Beach / Recreational Artificial Reef Project**

33.    On June 1, 2019, PAC COMM, as contractor, entered into a written contract with the City of Deerfield Beach to perform certain enunciated work on the project commonly known as "Recreational Artificial Reef" in Deerfield Beach, Florida ("Artificial Reef Project").

34.    On or about June 1, 2019, FMIC, as surety, issued separate Subcontract Payment Bond and Subcontract Performance Bond, each bearing bond no. SUR0002657 on behalf of PAC COMM, as principal, with the City of Deerfield Beach as obligee, on the Artificial Reef Project (collectively, the "Artificial Reef Bonds").  True and correct copies of the Artificial Reef Bonds are attached hereto as **Exhibit "A.3"**.

35.     On or about October 4, 2019, the City of Deerfield Beach made a performance claim against the Artificial Reef Bonds.

36.     On or about February 28, 2020, the City of Deerfield Beach and FMIC entered into a settlement agreement to resolve, among other things, the claim against the Artificial Reef Bonds.

37.     As a result of the City of Deerfield Beach's claim, FMIC retained counsel to assist with its investigation and resolution of same.   FMIC incurred expenses in the amount of $29,597.00 as a result of having issued the Artificial Reef Bonds on behalf of PAC COMM.

**C.      FMIC's Demands Against INDEMNITORS and FMIC's Loss and Expenses**

38.     As a result of the claims against the Bonds, FMIC engaged in several written and oral communications with the INDEMNITORS, seeking indemnity, exoneration, and collateralization under the Indemnity Agreement, as well as the immediate production of all books, records and credit of the INDEMNITORS.

39.     On September 4, 2020, FMIC made written indemnity demand upon the INDEMNITORS to exonerate FMIC against the various pending claims for the Cruise Terminal J Repairs Project.  A true and correct copy of FMIC's correspondence is attached hereto and made a part hereof as **Exhibit "E"**.

40.     On July 30, 2020 and September 8, 2020, FMIC made written demand upon the INDEMNITORS under the Indemnity Agreement to exonerate FMIC against the various pending claims for the Legion Park Seawall Project.  A true and correct copy of FMIC's correspondence is attached hereto and made a part hereof as **Exhibits "F" and "G"**.

41.     On March 5, 2020, FMIC made written indemnity demand upon the INDEMNITORS to exonerate FMIC against the various pending claims for the Recreational Artificial Reef Project.  A true and correct copy of FMIC's correspondence is attached hereto and made a part hereof as **Exhibit "H"**.

CASE NO.: _____

42.     Despite such demands, the INDEMNITORS have and continue to fail and/or refuse to indemnify and exonerate FMIC under the Indemnity Agreement.  Further, the INDEMNITORS have and continue to fail and/or refuse to produce to FMIC all books, records and accounts of the INDEMNITORS, as required under the Indemnity Agreement.

43.     Despite the numerous demands, the INDEMNITORS have failed to indemnify FMIC or post collateral as required under the Indemnity Agreement.

44.     FMIC has incurred significant financial losses and expenses as a result of having issued the Bonds to PAC COMM.

45.     FMIC anticipates incurring additional losses and expenses in investigating, defending against and/or satisfying any liability which may ultimately be determined in connection with any existing/future claims against the Bonds.

46.     FMIC has retained the services of the undersigned counsel to represent its interests in this matter and is required to pay a reasonable fee for such services.

## COUNT I - BREACH OF CONTRACT: DAMAGES /
## DEMAND FOR INDEMNIFICATION
## (AGAINST INDEMNITORS)

47.     FMIC re-alleges and re-avers the allegations of paragraphs 1 through 46 hereof, as if fully set forth herein.

48.     This is an action for damages seeking relief at law under the Indemnity Agreement.

49.     There exists a valid and fully enforceable contract between FMIC and the INDEMNITORS, the terms of which are memorialized in the Indemnity Agreement.

50.     FMIC has fully performed all of its obligations under the Indemnity Agreement.

51.     As a result of the claim against the Bonds, FMIC has made demand upon the INDEMNITORS under the Indemnity Agreement for payment in satisfaction of the losses and expenses incurred by FMIC.

CASE NO.: _____

52.     The INDEMNITORS have failed and/or refused to fully perform their obligations under the Indemnity Agreement, including but not limited to their obligation to indemnify FMIC.

53.     As a proximate result of the INDEMNITORS' breach of their obligations under the Indemnity Agreement, FMIC has and will continue to incur substantial financial damages, including but not limited to the expenditure of funds paid: (i) in investigation of the claims; (ii) in resolution of the claims; and/or (iii) in satisfaction of any liability which may ultimately be determined in connection with any existing/future claims against the Bonds.

WHEREFORE, Plaintiff FMIC respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the Defendants INDEMNITORS awarding FMIC: (a) its general, special and consequential damages which have been and/or will be incurred as a result of the INDEMNITORS' breach of the Indemnity Agreement*;* (b)  its attorneys' fees and costs incurred in prosecution of the instant action pursuant to the terms of the Indemnity Agreement, and awarding FMIC such other and further relief as this Court deems necessary, just and proper.

## COUNT II - COMMON LAW INDEMNIFICATION
## (AGAINST PAC COMM)

54.     FMIC re-alleges and re-avers the allegations of paragraphs 1 through 46 hereof, as if fully set forth herein.

55.     This is an action for damages seeking relief at common law and in equity.

56.     There exists a special relationship between FMIC, as surety, and PAC COMM, as principal, arising out of the parties business dealings related to the Bonded Contracts, Projects and Bonds, such that it is appropriate for common law indemnification to exist.

57.     FMIC has fully and completely performed any and all obligations arising out of the parties business dealings related to the Bonded Contracts, Projects and Bonds, and is wholly without fault for any losses, expenses and/or liabilities which have and/or may ultimately arise.

58.     FMIC has incurred losses and loss adjustment expenses as a result of the special relationship between FMIC and PAC COMM.  Additional indebtedness arising out of the special relationship has and will continue to accrue, including but not limited to the expenditure of funds paid: (i) in investigation of the claims; (ii) in resolution of the claims; and/or (iii) in satisfaction of any liability which may ultimately be determined in connection with any existing/future claims against the Bonds.

59.     Any and all losses and expenses incurred to date as a result of the special relationship between FMIC and PAC COMM, as well as any liability which may be imposed upon FMIC as a result of the pending claims against the Bonds, arise only out of the vicarious, constructive, derivative or technical liability imposed upon FMIC as a result of the fault and/or wrongdoing of PAC COMM.

60.     At common law, PAC COMM is responsible to FMIC for any and all losses and expenses incurred or to be incurred.

WHEREFORE, Plaintiff FMIC respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the Defendant PAC COMM, awarding FMIC: (a) its general, special and consequential damages which have been and/or will be incurred as a result of FMIC's payment of losses and expenses for which PAC COMM should be liable under the legal theory of common law indemnity; (b) its reasonable attorneys' fees and costs incurred in prosecution of the instant action; and (c) awarding FMIC such other and further relief as this Court deems necessary, just and proper.

## COUNT III - CONTRACTUAL EXONERATION
### (AGAINST INDEMNITORS)

61.     FMIC re-alleges and re-avers the allegations of paragraphs 1 through 46 hereof, as if fully set forth herein.

CASE NO.: _____

62.     This is an action for contractual exoneration.

63.     FMIC remains exposed to claims on the various Bonded Contracts, Projects and Bonds.

64.     Pursuant to Article 3 of the Indemnity Agreement, each of the INDEMNITORS, jointly and severally, agreed to exonerate FMIC from and against any losses and or expenses incurred in connection with FMIC's issuance of the Bonds.

65.     By virtue of the right of exoneration set forth in the Indemnity Agreement, FMIC is entitled to the INDEMNITORS' assets to protect FMIC from any and all additional losses and/or expenses which may be incurred in connection with FMIC's issuance of the Bonds.

66.     INDEMNITORS have failed to satisfy their obligations under the Indemnity Agreement by refusing to exonerate or otherwise place funds with FMIC sufficient to cover the actual losses and claim against the Bonds.

67.     Unless the personal assets of the INDEMNITORS are collateralized, FMIC will not be adequately secured for its obligation on the Bonds.

WHEREFORE, Plaintiff FMIC respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the Defendants INDEMNITORS: (a) requiring the INDEMNITORS to perform under the Indemnity Agreement and satisfy any and all pending claims under the Bonds which have not yet been paid by FMIC or, in the alternative, to post with FMIC satisfactory monies so as to protect FMIC from such future claims and/or liabilities; (b) pay and reimburse FMIC for its attorneys' fees and costs incurred in prosecution of the instant action; and (c) award FMIC such other and further relief as this Court deems necessary, just and proper.

CASE NO.: _____

## COUNT IV - COMMON LAW EXONERATION
## (<u>AGAINST PAC COMM</u>)

68.     FMIC re-alleges and re-avers the allegations of paragraphs 1 through 46 hereof, as if fully set forth herein.

69.     This is an action for exoneration at common law and in equity.

70.     There exists a special relationship between FMIC, as surety, and PAC COMM, as principal, arising out of the parties' business dealings related to the Bonded Contracts, Projects and Bonds, such that it is appropriate for common law exoneration to exist.

71.     FMIC has fully and completely performed any and all obligations arising out of the parties business dealings related to the Bonded Contracts, Projects and Bonds, and is wholly without fault for any losses, expenses and/or liabilities which have and/or may ultimately arise therefrom.

72.     FMIC has incurred direct losses and loss adjustment expenses associated with its investigation, defense and/or handling of the claim against the Bonds.  Additional indebtedness arising out of the special relationship will continue to accrue, including but not limited to the expenditure of funds paid: (i) in investigation of the claims; (ii) in resolution of the claims; and/or (iii) in satisfaction of any liability which may ultimately be determined in connection with any existing/future claims against the *Bonds.*

73.     Any and all losses and expenses incurred to date as a result of the special relationship between FMIC and PAC COMM, as well as any liability which may be imposed upon FMIC as a result of the pending claim against the Bonds, arise only out of the vicarious, constructive, derivative or technical liability imposed upon FMIC as a result of the fault and/or wrongdoing of PAC COMM.

CASE NO.: _____

74.     At common law, PAC COMM is responsible to FMIC for any and all losses and expenses incurred or to be incurred, and PAC COMM is further obligated to immediately provide FMIC with sufficient funds as needed to satisfy FMIC's existing and potential obligations under the Bonds.

75.     By virtue of the right of exoneration set forth at common law and in equity, FMIC is entitled to PAC COMM's assets to protect FMIC from any and all losses and/or expenses which may be incurred in connection with FMIC's issuance of the Bonds.

76.     PAC COMM has failed to satisfy its obligations at common law and in equity by refusing to exonerate or otherwise place funds with FMIC sufficient to cover the actual losses and claim against the Bonds.

77.     Unless the personal assets of PAC COMM are collateralized, FMIC will not be adequately secured for its obligation on the Bonds.

WHEREFORE, Plaintiff FMIC respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the Defendant PAC COMM: (a) requiring PAC COMM to exonerate FMIC at common law and in equity by satisfying any and all pending claims under the Bonds which have not yet been paid by FMIC or, in the alternative, to post with FMIC satisfactory monies so as to protect FMIC from such future claims and/or liabilities; (b) pay and reimburse FMIC for its attorneys' fees and costs incurred in prosecution of the instant action; and (c) award FMIC such other and further relief as this Court deems necessary, just and proper.

### COUNT V – SPECIFIC PERFORMANCE/REMOVAL OF PROPERTY (AGAINST INDEMNITORS)

78.     FMIC re-alleges and re-avers the allegations of paragraphs 1 through 46 hereof, as if fully set forth herein.

79.     This is an action for specific performance seeking injunctive relief.

CASE NO.: _____

80.     There exists a valid and fully enforceable contract between FMIC and INDEMNITORS, the terms of which are memorialized in the Indemnity Agreement.

81.     FMIC has fully performed all of its obligations under the Indemnity Agreement.

82.     Upon termination of the bonded contract on the Terminal J Project, the INDEMNITORS failed and/or refused to remove its material and equipment including, but not limited to, several vessels, stockpiled materials and construction debris.  As a result, Miami-Dade County incurred damages in the amount of $825,000.00 to relocate said vessels, stockpiled materials and construction debris in light of the impending perils associated with Tropical Storm Isaias and obstructions to adjacent property at the Port of Miami.   Following TS Isaias, Miami-Dade County returned the vessels and stockpiled materials to its previous location at the Terminal J Project.

83.     Miami-Dade County has made demand upon FMIC to recover the cost of relocating the vessels and stockpiled materials and continues to make demand for the permanent removal of the property.

84.     FMIC has made numerous demands upon the INDEMNITORS to remove the vessels and stockpiled materials on an expedited basis.

85.     The INDEMNITORS have failed to do so.

86.     As a result, FMIC continues to face significant liability on account of the INDEMNITORS failure to remove its property from the Terminal J Project

87.     Under the Indemnity Agreement, the INDEMINTORS are obligated to hold FMIC harmless and exonerate it from loss.

88.     INDEMNITORS action or inaction in failing to remove the vessels and stockpiled materials constitute a breach of the Indemnity Agreement. Article 7 of the Indemnity Agreement provides that FMIC may be entitled to injunctive relief and/or specific performance to compel

CASE NO.: _____

INDEMNITORS removal of said materials, debris and/or other property left at the Terminal J Project site.

89.     FMIC is entitled to equitable relief for specific performance of INDEMNITORS' obligation to remove said property from the Terminal J Project.

WHEREFORE, Plaintiff FMIC respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the Defendants INDEMNITORS, granting FMIC specific performance of the Indemnity Agreement by directing INDEMNITORS to remove said materials from the Project, awarding FMIC its attorneys' fees and costs incurred in prosecution of the instant action pursuant to the terms of the Indemnity Agreement, and awarding FMIC such other and further relief as this Court deems necessary, just and proper.

**COUNT VI -SPECIFIC PERFORMANCE/INJUNCTIVE RELIEF
AND DEMAND FOR POSTING OF COLLATERAL
(AGAINST INDEMNITORS)**

90.     FMIC re-alleges and re-avers the allegations of paragraphs 1 through 46 hereof, as if fully set forth herein.

91.     This is an action for specific performance seeking injunctive relief.

92.     There exists a valid and fully enforceable contract between FMIC and INDEMNITORS, the terms of which are fully memorialized in the Indemnity Agreement.

93.     FMIC has fully performed all of its obligations under the Indemnity Agreement.

94.     As a result of FMIC's liability arising from the INDEMNITORS' breach of its obligations on the Terminal J. Project, FMIC made demand upon the INDEMNITORS under the Indemnity Agreement to exonerate, indemnify and post satisfactory collateral with FMIC to cover FMIC's payments and potential losses and expenses.

- 17 -

CASE NO.: _____

95.     Despite such demands, INDEMNITORS have failed and/or refused to full perform their obligations under the Indemnity Agreement, including but not limited to their obligation to post satisfactory collateral upon demand by FMIC.

96.     Article 7 of the Indemnity Agreement provides that FMIC may be entitled to injunctive relief and/or specific performance to compel INDEMNITORS posting of collateral.

97.     INDEMNITORS' failure to deposit the demanded collateral with FMIC in accordance with the Indemnity Agreement has and continues to cause irreparable harm for which FMIC has no adequate remedy at law.

98.     FMIC is entitled to equitable relief for specific performance of INDEMNITORS' obligation to post satisfactory collateral.

WHEREFORE, Plaintiff FMIC respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the Defendants INDEMNITORS, granting FMIC specific performance of the Indemnity Agreement by: (a) directing the INDEMNITORS to immediately post satisfactory collateral with FMIC to cover FMIC's actual and/or potential losses and expenses; (b) prohibiting the INDEMNITORS from selling, transferring, alienating or otherwise encumbering any of the INDEMNITORS' assets until such time as the requisite collateral is posted; (c) requiring the INDEMNITORS to render a full and complete accounting of all assets owned by them or in which they have an interest; (d) awarding FMIC its attorneys' fees and costs incurred in prosecution of the instant action pursuant to the terms of the Indemnity Agreement; and (e) awarding FMIC such other and further relief as this Court deems necessary, just and proper.

## COUNT VII – QUIA TIMET
## <u>(AGAINST INDEMNITORS)</u>

99.     FMIC re-alleges and re-avers the allegations of paragraphs 1 through 46 hereof, as if fully set forth herein.

CASE NO.: _____

100.     This is an action for *quia timet* seeking injunctive and equitable relief.

101.     The various claimants have asserted claims and made demand upon FMIC to satisfy its obligations under the Bonds.

102.     FMIC has provided notice to and demanded indemnity and exoneration from the INDEMNITORS under the terms of the Indemnity Agreement, requiring INDEMNITORS to post collateral sufficient to defray actual and/or potential losses and expenses in connection with the Bonds.

103.     INDEMNITORS have failed to satisfy their obligations under the Indemnity Agreement by refusing to exonerate or otherwise post collateral with FMIC sufficient to cover the actual and/or potential losses and expenses incurred by FMIC.

104.     As a result of INDEMNITORS' breach of the Indemnity Agreement, FMIC has sustained losses, damages, costs, expenses and attorneys' fees by reason of having furnished and executed the Bonds.

105.     FMIC is concerned and apprehensive that INDEMNITORS are or will become financially unable to pay any amounts that may be found owing to the various claimants for which FMIC may be liable, or that INDEMNITORS, based upon their refusal to exonerate FMIC in accordance with its demands, will sell, transfer, dispose of, lien, secure or otherwise divert or conceal their assets.  FMIC is also concerned and apprehensive that INDEMNITORS will be financially unable to pay the expenses incurred by FMIC, including attorneys' fees.

106.     In the absence of the equitable relief sought herein, FMIC will suffer irreparable damage and loss because it will be forced to advance further funds in connection with the claims on the Bonds without being adequately secured by INDEMNITORS for its obligations under the Bonds.

CASE NO.: _____

107.    By virtue of the rights under the Indemnity Agreement and the common law and equitable doctrine of *quia timet*, FMIC is entitled to have INDEMNITORS post funds or other security with FMIC that is sufficient to cover the actual and/or anticipated losses associated with the various claim against the Bonds.

108.    Unless the relief in the nature herein requested or its equivalent is granted, FMIC's equitable right of *quia timet* will be forever lost, depriving FMIC of adequate security for its obligations under the Bonds.  Further, unless the equitable relief requested below is granted, INDEMNITORS are likely to sell, transfer, dispose, lien, secure, or otherwise, divert their assets from being used to discharge INDEMNITORS' obligations to exonerate FMIC.

109.    FMIC has a high probability of success on the merits, as the pending allegations of PAC COMM's default under the Bonds and Projects has clearly triggered INDEMNITORS' obligations under the Indemnity Agreement.  FMIC has duly performed its duties, obligations and conditions under the Indemnity Agreement, and the Indemnity Agreement provides for the relief sought in this count.

110.    The threatened injury to FMIC outweighs the potential damage to INDEMNITORS if the relief requested herein is granted, and such relief would not be adverse to the public interest.

WHEREFORE, Plaintiff FMIC respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the INDEMNITORS, awarding FMIC its general and consequential damages which have been and/or will be incurred (including FMIC's attorneys' fees and costs under the Indemnity Agreement), and ordering INDEMNITORS to immediately post collateral with FMIC (or deposit with the Clerk of this Court, for the benefit and protection of FMIC) in an amount to be determined by this Court to cover FMIC's anticipated losses and expenses in connection with the Bonds.  In the alternative, FMIC respectfully requests that this court order the INDEMNITORS to:

CASE NO.: _____

a.  Render a full and complete accounting of all assets owned by them or which they have an interest;

b.  Allow full and complete access to all financial books, records and accounts maintained by them;

c.  Refrain from selling, transferring or disposing of their assets including, but not limited to, sums held in offshore accounts;

d.  Grant to FMIC an equitable lien upon all assets and property of INDEMNITORS including, but not limited to, realty, personalty and mixed, owned by INDEMNITORS, and property in which INDEMNITORS have any interest, to remain in effect until INDEMNITORS place funds with FMIC as required by the Indemnity Agreement securing FMIC against any loss it has sustained or will sustain by virtue of it having executed the Bonds; and

e.  Award FMIC such other and further relief as this Court deems necessary, just and proper.

**COUNT VIII – SPECIFIC PERFORMANCE**
**DEMAND FOR PRODUCTION OF BOOKS AND RECORDS**
**(AGAINST INDEMNITORS)**

111.  FMIC re-alleges and re-avers the allegations of paragraphs 1 through 46 hereof, as if fully set forth herein.

112.  This is an action for specific performance seeking equitable relief.

113.  There exists a valid and fully enforceable contract between FMIC and the INDEMNITORS, the terms of which are memorialized in the Indemnity Agreement.

114.  Pursuant to Article 12 of the Indemnity Agreement, the INDEMNITORS, jointly and severally, obligated themselves to provide all books, records and credit as may be requested

CASE NO.: _____

by FMIC in connection with the claims against the Bonds, as well as related to the instant indemnity demands.

115.    As a result of the claims against the Bonds, FMIC made several demands upon the INDEMNITORS under the Indemnity Agreement to provide access to FMIC for the inspection of all of the INDEMNITORS' books, records and credit.

116.    Despite FMIC's best efforts, the INDEMNITORS have failed and/or refused to fully perform their obligations under the Indemnity Agreement, including but not limited to their obligation to provide FMIC with access to their books, records and credit.

117.    INDEMNITORS' failure to provide access to their books, records and credit in accordance with the Indemnity Agreement has and continues to cause irreparable harm for which FMIC has not adequate remedy at law.

118.    FMIC is entitled to the equitable reliefs of both an injunction and specific performance of the INDEMNITORS' obligations to produce their books, records and credit.

WHEREFORE, Plaintiff FMIC respectfully requests that this Honorable Court enter a *Preliminary Injunction* and *Final Judgment of Specific Performance* in its favor and against the Defendants INDEMNTIORS awarding FMIC: (a) specific performance of the Indemnity Agreement by directing the INDEMNITORS to immediately produce to FMIC for inspection and/or copying all of their books, records and credit; (b) its attorneys' fees and costs incurred in prosecution of the instant action pursuant to the terms of the Indemnity Agreement; and (c) such other and further relief as this Court deems necessary, just and proper.

## COUNT IX – BREACH OF CONTRACT: DAMAGES / FAILURE TO PAY PREMIUMS (AGAINST INDEMNITORS)

119.    FMIC re-alleges and re-avers the allegations of paragraphs 1 through 46 hereof, as if fully set forth herein.

CASE NO.: _____

120.    This is an action for damages seeking relief at law under the Indemnity Agreement.

121.    There exists a valid and fully enforceable contract between FMIC and the INDEMNITORS.

122.    FMIC has fully performed all of its obligations under the Indemnity Agreement.

123.    Pursuant to Article 2 of the Indemnity Agreement, the INDEMNITORS, jointly and severally, agreed to pay to FMIC all premiums and other charges for each Bond:

> **Payment of Premium:** Indemnitors shall ***promptly pay to Company all premiums and other charges for each Bond executed and all renewals and extensions thereof***, which obligation shall continue with respect to each Bond until the Company has been provided evidence satisfactory to the Company that such Bond has been fully released and/or discharged (Emphasis supplied).

124.    In addition to the Legion Park Seawall Project, PAC COMM, as contractor, entered into a written contract with Seminole County to perform certain enunciated work on the project commonly known as "Howell Creek at Red Bug Lake Road Improvements, Segment 1" in Seminole County ("Howell Creek Project").

125.    On or about January 17, 2020, FMIC, as surety, issued a Material and Workmanship Bond, bearing no. SUR0002732, on behalf of PAC COMM, as principal, with Seminole County, as oblige, on the Howell Creek Project (the "Howell Creek Bond").  True and correct copy of the Howell Creek Bond is attached hereto as **Exhibit "I"**.

126.    The INDEMNITORS have failed and/or refused to fully perform their obligations under the Indemnity Agreement by failing and/or refusing to pay the Bond premiums for the Legion Park Seawall Project for $19,434.00 and the Howell Creek Project for $5,236.00.  True and correct copies of the outstanding invoices for the Howell Creek Bond premiums are attached hereto as **Exhibit "J.1 and J.2"**.

127.    As a proximate result of the INDEMNITORS' breach of their obligations under the Indemnity Agreement, FMIC has and will continue to incur financial damages.

CASE NO.: _____

WHEREFORE, Plaintiff, FMIC respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the Defendants INDEMNITORS awarding FMIC: (a) its general, special and consequential damages which have been and/or will be incurred as a result of the INDEMNITORS' breach of the Indemnity Agreement; (b) its attorney's fees and costs incurred in the prosecution of the instant action pursuant to the terms of the Indemnity Agreement, and awarding FMIC such other and further relief as this Court deems necessary, just and proper.

DATED this 5th day of October, 2020.

**ETCHEVERRY HARRISON, LLP**
Attorneys for FMIC
150 South Pine Island Road, Suite 105
Ft. Lauderdale, FL 33324
Phone: (954) 370-1681
Fax:    (954) 370-1682
E-mail:  Etcheverry@etchlaw.com
             kerbel@etchlaw.com
             service@etchlaw.com

By:  /s/ *Edward Etcheverry*
         Edward Etcheverry, Fla  Bar No.: 856517
         Steve Kerbel, Fla. Bar No.: 503541