UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 20-cv-24064-JAL

FRANKENMUTH MUTUAL INSURANCE
COMPANY,

      Plaintiff,

vs.

PAC COMM, INC., a Florida corporation and
EMMANUEL E. PACIN, an individual,

      Defendants.

_____/

**FRANKENMUTH MUTUAL INSURANCE COMPANY'S
MOTION AND INCORPORATED MEMORANDUM OF LAW FOR
FOR PRELIMINARY INJUNCTION TO COMPEL POSTING OF COLLATERAL**

Plaintiff, FRANKENMUTH MUTUAL INSURANCE COMPANY ("FMIC"), by and through its undersigned counsel and pursuant to Rule 65, *Federal Rules of Civil Procedure*, and S.D. LOCAL RULE 7.1(E), hereby files the instant *Motion and Incorporated Memorandum of Law for Preliminary Injunction to Compel Posting of Collateral* (the "*Motion*") in accordance with FMIC's rights under the *General Agreement of Indemnity* ("*Indemnity Agreement*") executed by Defendants, PAC COMM, INC. ("PAC COMM") and EMMANUEL E. PACIN ("PACIN") (collectively, the "INDEMNITORS") and as supported by the *Affidavit of Kathleen Maloney*.[1]

## I. INTRODUCTION

This *Motion* seeks a preliminary injunction to compel the INDEMNITORS to post collateral to protect FMIC from losses and expenses as a result of having issued surety bonds to

---

[1] *See Affidavit of Kathleen Maloney in Support of Frankenmuth Mutual Insurance Company's Motion for Preliminary Injunction and* ("*Maloney Aff.*"), attached hereto as **Exhibit "A"**.

PAC COMM.   As a condition to the issuance of such bonds, the INDEMNITORS executed an *Indemnity Agreement* in favor of FMIC, agreeing, among other things, to post collateral, on demand, to secure FMIC from potential loss and expense.  In the event the INDEMNITORS failed to post collateral, the *Indemnity Agreement* specifically contemplated the preliminary injunctive relief sought herein.

PAC COMM defaulted on the bonded construction contracts and FMIC received numerous claims under the payment and performance bonds.  FMIC has been required to satisfy claims under the surety bonds, and has incurred, and is facing significant loss and expenses in excess of $3.8 million.   Despite demand, none of the INDEMNITORS has complied with the obligations to indemnify, exonerate, and/or post collateral.   To the contrary, FMIC has learned that the INDEMNITORS may be in the process of dissipating their assets as more fully described herein.  As such, the INDEMNITORS are in material breach of their obligations under the *Indemnity Agreement*.  If the relief requested by FMIC herein is not granted, FMIC will forever lose the benefits of its promised collateral security.

## II.  <u>FACTUAL BACKGROUND</u>

### A.  <u>The Projects, *Bonds* and *Indemnity Agreement*</u>

FMIC is engaged in the business of providing surety bonds, such as payment and performance bonds, to selected contractors.[2]  PAC COMM is a Florida based contracting company, which performs, among other things, marine construction.[3]

PAC COMM entered into various construction contracts with several municipalities requiring PAC COMM to obtain payment and performance bonds.  In connection with those construction contracts,

---

[2] *See Maloney Aff.*, ¶3.

[3] *See Maloney Aff.*, ¶4.

CASE NO.: 20-cv-24064-JAL

PAC COMM requested, and FMIC issued, the following *Performance Bonds* and *Payment Bonds* (collectively, the "*Bonds*"):[4]

| Obligee | Project | Bond | Penal Sum |
|---|---|---|---|
| Miami-Dade County | Cruise Terminal J | SUR0001597 | $8,151,960.00 |
| City of Miami | Legion Park Seawall | SUR0002728 | $1,128,939.81 |
| City of Deerfield Beach | Recreational Artificial Reef | SUR0002657 | $   355,385.00 |

To induce FMIC to issue the *Bonds*, the INDEMNITORS executed an *Indemnity Agreement* in favor of FMIC.[5]  Specifically, under the *Indemnity Agreement* the INDEMNITORS agreed as follows:

- **Article 3:  Indemnity and Hold Harmless** [6]

  Indemnitors *shall exonerate, indemnify and save Company harmless from and against all Loss*. An itemized, sworn statement by an employee of Company, or other evidence of payment, shall be prima facie evidence of the propriety, amount and existence of Indemnitors' liability. *Amounts due to Company shall be payable upon demand*. (Emphasis added)

- **Article 5:  Collateral Security** [7]

  Indemnitors *agree to deposit with Company, upon demand, funds, other collateral security acceptable to Company, in an amount as determined by Company sufficient to discharge any Loss or anticipated Loss*. … Sums deposited with Company pursuant to this paragraph may be used by Company to pay such claim or be held by Company as collateral security against any Loss or unpaid premium on any Bond. … *Indemnitors agree that Company would suffer irreparable damage and would not have an adequate remedy at law if Indemnitors fail to comply with the provisions of this paragraph*…. (Emphasis added)

---

[4] *See Maloney Aff.,* ¶6; A true and correct copy of the *Bonds* are attached thereto as **Composite Exhibit "1"**.

[5] *See Maloney Aff.,* ¶7; A true and correct copy of the *Indemnity Agreement* is attached thereto as **Exhibit "2"**.

[6] *See Indemnity Agreement,* Articles 3.

[7] *See Indemnity Agreement,* Article 5.

CASE NO.: 20-cv-24064-JAL

- **Article 7:  Remedies – Right to Injunctive Relief** [8]

  … The *failure of Indemnitors*, collectively or individually, ***to perform or comply*** with any provision of this Agreement ***shall cause irreparable harm to Company for which Company has no adequate remedy at law***. Company ***shall be entitled to injunctive relief and/or specific performance, and Indemnitors waive any claims or defenses to the contrary***. (Emphasis added)

B.  **Claims Against the *Bonds***

1.  **The Miami Dade County / Terminal J Project**

On April 29, 2020, Miami-Dade County issued a notice to cure upon PAC COMM as a result of several alleged performance deficiencies.[9]   On June 1, 2020, Miami-Dade County declared PAC COMM in breach of the contract and issued its *Notice of Termination for Default* upon PAC COMM and made demand against the Terminal J performance bond to complete the work remaining on the Terminal J Project.[10]

As a result of Miami-Dade County's claim, FMIC retained counsel and a construction consultant and independently investigated the default allegations to determine how best to proceed under the performance bond.[11]   Based upon its investigation, FMIC is in the process of tendering a completion contractor to Miami-Dade County to perform the remaining work under the bonded contract.[12]   FMIC's factual and/or potential liability under the Terminal J performance bond is in excess of $1,600,000.00[13]

---

[8] *See Indemnity Agreement*, Article 7.

[9] *See Maloney Aff.*, ¶8.

[10] *See Maloney Aff.*, ¶8.

[11] *See Maloney Aff.*, ¶8.

[12] *See Maloney Aff.*, ¶8.

[13] *See Maloney Aff.*, ¶8.

CASE NO.: 20-cv-24064-JAL

In addition to Miami-Dade County's claim, FMIC received claims under the Terminal J payment bond from PAC COMM's unpaid subcontractors and/or suppliers in connection with the Terminal J Project.[14]  Specifically, FMIC has received payment claims in excess of $835,000.00. FMIC has incurred and/or anticipates incurring significant financial losses and expenses as a result of having issued the Terminal J payment bond on behalf of PAC COMM.[15]

## 2.       The City of Miami / Legion Park Project

On July 6, 2020, the City of Miami advised PAC COMM that it was not performing work in a timely manner and required PAC COMM to provide adequate assurances of its ability to perform in accordance with the bonded contract.[16]  On July 7, 2020, the City of Miami requested that PAC COMM provide pending contract information/documentation and mobilize to the Legion Park Seawall Project site within 72 hours, or the City of Miami would default terminate the bonded contract.[17]

On September 4, 2020, the City of Miami declared PAC COMM in breach of the Legion Park Seawall Project and issued its *Notice of Contract Default* upon PAC COMM.  FMIC is in the process of independently investigating the default allegations to determine how best to proceed under the performance bond.[18]  FMIC is facing potential liability up to the penal sum ($1,128,939.81) of the performance bond and is incurring loss adjustment expenses as a result of having issued the Legion Park payment and performance bonds.[19]

---

[14] *See Maloney Aff.*, ¶9.

[15] *See Maloney Aff.*, ¶9.

[16] *See Maloney Aff.*, ¶10.

[17] *See Maloney Aff.*, ¶10.

[18] *See Maloney Aff.*, ¶10.

[19] *See Maloney Aff.*, ¶10.

CASE NO.: 20-cv-24064-JAL

### 3.      The City of Deerfield Project

On or about October 4, 2019, the City of Deerfield Beach made a performance bond claim as to the Artificial Reef Project.[20]  As a result, on February 28, 2020, the City of Deerfield Beach and FMIC entered into a settlement agreement to resolve, among other things, the claim against the Artificial Reef Bonds.[21]  FMIC incurred expenses in the amount of $29,309.00 as a result of having issued the Artificial Reef Bonds on behalf of PAC COMM.[22]

### 4.      Losses, Expenses and Potential Exposure Under the *Bonds*

As of the filing on this *Motion*, FMIC has paid: (a) $371,235.27 in satisfying payment bond claims[23]; (b) $109,500 in partial satisfaction of the performance bond claim as to the Miami-Dade County Terminal J Project[24]; and (c) $58,060.98[25] in expenses in handling the various claims asserted against the *Bonds*.

Given the pending claims, FMIC faces continued potential exposure under the *Bonds* for $3,267,387.81, comprised of the following: [26]

---

[20] *See Maloney Aff.*, ¶11.

[21] *See Maloney Aff.*, ¶11.

[22] *See Maloney Aff.*, ¶11.

[23] This amount represents the following payments by FMIC to the following: (a) $20,747.50 – George's Crane; (b) $16,940.85 – US American; (c) $49,824.40 – Dayton Superior; (d) $135,476.90 – Urethane Products; (e) $29,066.70 – Deep Contact Diving; (f) $2,122.50 – Jones Benitez; (g) $20,000.00 – United Rentals; (h) $7,069.15 – Coastal Welding; (i) $83,026.13 – Marine Structures; and (j) $6,961.14 – Sorrel Enterprises.

[24] This amount represents two payments ($80,000.00 and $29,500.00) to Ebsary Foundation Company.

[25] This amount represents the following payments by FMIC to the following: (a) $26,280.48 - Forcon International Corporation (engineering consultant); (b) $2,471.50 to LF Stephens (investigative firm); and (c) $29,309.00 for expenses associated with resolving the performance bond claim for the Artificial Reef Project.

[26] *See Maloney Aff.*, ¶12.

CASE NO.: 20-cv-24064-JAL

| Project | Perf. Claim | Pay. Claims | Projected Expenses | Potential Exposure |
|---|---|---|---|---|
| Miami-Dade County / Terminal J | $1,623,683.00[27] | $439,765.00[28] | $75,000.00 | $2,138,448.00 |
| City of Miami / Legion Park | $1,128,939.81[29] | Unknown | Unknown | $1,128,939.81 |
| **TOTALS** | $2,752,622.81 | $439,765.00 | $75,000.00 | $3,267,387.81 |

[27] This amount is comprised of the following figures:

| | |
|---|---|
| Original Contract Price | $8,151,960.00 |
| Descoping of Phases 1 – 5 | ($4,076,272.00) |
| Payments to PAC COMM | ($999,410.00) |
| Miami-Dade County direct purchases | ($201,736.00) |
| Miami-Dade County pending direct purchases | ($88,225.00) |
| Remaining Contract Balance | $2,786,317.00 |
| Completion Costs | ($3,352,000.00)* |
| Costs to Secure Site | ($110,000.00) |
| Miami-Dade County Equipment Relocation Costs | ($825,000.00) |
| Liquidated Damages | ($123,000.00) |
| **Performance Bond Exposure** | **$1,623,683.00** |

***See** Ebsary Foundation Company's October 20, 2020 revised bid/proposed Tender Agreement attached hereto as **Exhibit "B"**.

[28] FMIC initially set a loss reserve of $811,000.00 for all known payment bond claims and has since issued payments totaling $371,235.00 in satisfaction of those claims.

[29] *See* FMIC's July 30, 2020 and September 8, 2020 demand letters attached hereto as **Exhibits "C"** and **"D"** and to the *Complaint* as Exhibits "F" and "G".

### C.     Collateral Demands

As a result of the claims against the various performance and payment bonds, FMIC engaged in several written and oral communications with the INDEMNITORS, seeking indemnity, exoneration, and collateralization under the *Indemnity Agreement:*[30]

- On September 4, 2020, FMIC made formal written demand upon the INDEMNITORS to exonerate FMIC and deposit $939,000.00 with FMIC to secure FMIC against loss and expense in connection with the Terminal J Project.[31]

- On July 30, 2020 and September 8, 2020, FMIC made formal written demand upon the INDEMNITORS to procure a discharge of the bonds or deposit the full penal sum of the bonds ($1,128,939.81) as collateral security against the various pending claims for the Legion Park Seawall Project.[32]

- On March 5, 2020, FMIC made formal written demand upon the INDEMNITORS to exonerate FMIC and pay $29,597.00 for costs incurred in investigating and resolving the performance bond claim for the Artificial Reef Project.[33]

As of the filing of this *Motion*, FMIC has neither received any collateral from the INDEMNITORS, nor have the INDEMNITORS indemnified FMIC for its losses and expenses incurred to date.[34]

FMIC is concerned that the INDEMNITORS will be unable to satisfy judgments potentially entered against FMIC in relation to the various performance and payment bonds on the

---

[30] *See Maloney Aff.*, ¶13.

[31] *See Maloney Aff.*, ¶14.

[32] *See Maloney Aff.*, ¶15.

[33] *See Maloney Aff.*, ¶16.

[34] *See Maloney Aff.*, ¶17.

Projects, as well as FMIC's ongoing expenses, as required under the *Indemnity Agreement*.[35]  If the relief requested by FMIC herein is not granted, FMIC will forever lose the benefits of its promised collateral security.

### D.  <u>Dissipation of Assets</u>

On or about August 24, 2020, PACIN listed the following real properties for sale with Coldwell Banker Realty: (a) a residential condominium at 6039 Collins Avenue, Apt. #1725, Miami Beach, Florida for $799,000.00 ("Property 1"); and (b) a residential condominium at 9000 S.W. 24th Street, Apt. 212, Miami, Florida for $165,000.00 ("Property 2").[36]

On or about October 14, 2020, PACIN sold Property 2 for $155,000.00.[37]

Thereafter, on October 30, 2020, Miami-Dade County advised counsel for FMIC that PACIN was attempting to procure the release of a work deck barge owned by PAC COMM which PACIN allegedly sold to a purchaser in the Bahamas.[38]

### III.  <u>STANDARD OF RELIEF</u>

Rule 65, *Fed.R.Civ.P.,* provides for the issuance of a preliminary injunction.  It is well established that a court may grant preliminary injunctive relief when the moving party shows that:

   a.     it has a substantial likelihood of success on the merits;

   b.     irreparable injury will be suffered unless the injunction issues;

   c.     the threatened injury to the movant outweighs the potential damage
         the proposed injunction may cause the opposing party; and

---

[35] *See Maloney Aff.*, ¶17.

[36] *See Maloney Aff.*, ¶18.

[37] *See Maloney Aff.*, ¶19.

[38] *See Maloney Aff.*, ¶20.  A true and correct copy of Miami-Dade County's October 30, 2020 e-mail is attached hereto and made a part hereof as **Exhibit "E"**.

      d.     if issued, the injunction would not be adverse to the public interest.

*See Allied World Specialty Insurance Company v. Lawson*, 2016 WL 695980 (M.D. Fla. 2016); *Klay v. United Healthgroup, Inc.*, 376 F. 3rd 1092 (11th Cir. 2004); *Canal Authority of the State of Florida v. Callaway,* 489 F.2d 567, 572-73 (5th Cir. 1974).   No single factor in this list is dispositive, but rather a balancing of all elements is required. *Id.*  Moreover, a strong showing of likelihood of success on the merits may diminish the proof required for the other three elements. *See Wingsco Energy, Inc. v. Vanguard Groups Resources 1984, Inc.,* 1989 WL 223756 (S.D. Tex. 1989).  Furthermore, while a preliminary injunction is "an extraordinary and drastic remedy" that should only be granted if the movant clearly establishes all four elements, see *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1306 (11th Cir. 1998), the Court does not have to find that "evidence positively guarantees a final verdict in plaintiff's favor," *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.,* 51 F.3d 982, 985 (11thCir. 1995).

     As more fully set forth below, FMIC has met each of the requirements for the Court's issuance of preliminary injunctive relief.

## IV.   MEMORANDUM OF LAW

### A.    FMIC Is Entitled to a Preliminary Injunction Compelling <u>INDEMNITORS to Post Collateral Security</u>

     The INDEMNITORS contractually agreed that FMIC may enforce its right to collateral by way of mandatory injunctive relief:

> The failure of Indemnitors, collectively or individually, to perform or comply with any provision of this Agreement ***shall cause irreparable harm to the Company for which Company has no adequate remedy at law***. Company ***<u>shall be entitled to injunctive relief and/or specific performance</u>***, and Indemnitors waive any claims or defenses to the contrary. (Emphasis added)

In connection with such contractual obligation for injunctive relief, FMIC demonstrates herein that: (a) it has a substantial likelihood of success on the merits; (b) irreparable injury will be

suffered unless the injunction issues; (c) the threatened injury to the movant outweighs the potential damage the proposed injunction may cause the opposing party; and (d) if issued, the injunction would not be adverse to the public interest. *See Lawson; Klay; Calloway.*

> **1.    Likelihood of Success on the Merits**

Here there is no dispute that FMIC has shown a substantial likelihood of success on its breach of contract claim with regard to the collateral provision of the *Indemnity Agreement*. The elements for breach of contract in Florida "are (1) a valid contract; (2) a material breach; and (3) damages." *Beck*, 175 F.3d at 914; *Abbott Labs, Inc.,* 765 So. 2d at 740. There is no dispute that the *Indemnity Agreement* is signed by the INDEMNITORS. Additionally, there is nothing apparent on the face of the *Indemnity Agreement* evidencing that it is invalid and/or that the INDEMNITORS will be able to challenge such validity.

At the request of PAC COMM, FMIC issued the payment and performance bonds. Given PAC COMM's failure to perform the bonded contracts, FMIC has received payment and performance bond claims under the Miami-Dade County and City of Miami projects. FMIC has retained counsel and a construction consultant to assist in FMIC's investigation into the default allegations against PAC COMM. FMIC is in the process of resolving the claims against the payment and performance bonds.

Based upon its rights under the *Indemnity Agreement*, FMIC made several demands upon the INDEMNITORS to post collateral and indemnify FMIC for its losses and expenses to date. To date, the INDEMNITORS failed to provide such collateral and indemnify FMIC – constituting a material breach of the *Indemnity Agreement*. FMIC's damages are imminent because it is having to pay claims out of pocket. Therefore, it is without question that FMIC has established a likelihood of success on its breach of the collateral provision within the *Indemnity Agreement*.

### 2.    FMIC Will Be Irreparably Injured Absent Entry of an Injunction

"[P]erhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *Triangle Publications, Inc. v. Knight-Ridder Newspapers, Inc.,* 445 F. Supp. 875, 877 (S.D. Fla. 1978) *aff'd,* 626 F.2d 1171 (5th Cir. 1980).  With respect to irreparable harm, the *Indemnity Agreement* itself <u>*acknowledges*</u> irreparable harm, and the INDEMNITORS <u>*agreed*</u> to preliminary injunctive relief in the *Indemnity Agreement*.  *See Industrial Commercial Structures, Inc.,* No. 6:12-cv-1294-ORL-28, WL 4792906 at *3 ("the nature of the injury in collateral security provision cases is the lack of collateralization while claims are pending, and nothing can remedy that injury after the fact").

The case of *Liberty Mutual Ins. Co. v. Aventura Engineering and Construction Co.*, 534 F.Supp.2d 1290, 1320-1321 (S.D. Fla. 2008) is dispositive on the issue of irreparable harm and the lack of an adequate remedy at law to FMIC.  In *Liberty Mutual, supra,* this Court held "that the Florida Supreme Court would specifically recognize a surety's entitlement to enforce its contractual rights to collateralization." *Id.* at 1321.  In reaching this conclusion, the *Liberty* court cited to a host of cases nationwide for the principle that a surety's loss of its collateralization rights is irreparable injury as a matter of law.  *See Auto Owners Ins. Co.,* No. 05-334-Orl-31, 2007 WL 676217; *Safeco Ins. Co. of Am. v. Schwab,* 739 F.2d 431 (9th Cir.1984) ("sureties are ordinarily entitled to specific performance of collateral security clauses.  If a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced"); *Milwaukee Constr. Co. v. Glens Falls Ins. Co.,* 367 F.2d 964 (9th Cir. 1966), *citing* 72 C.J.S., Principal and Surety §303 (1951) (legal remedy of money damages was not adequate and specific performance was available to require indemnitors to deposit with surety money or acceptable security equal to its established reserves); *U.S. Fidelity & Guaranty Co. v. Feibus,* 15

F.Supp.2d 579 (D. Pa. 1998) (surety was entitled to specific performance in order to protect the surety's bargained-for-rights to collateral security); *United Bonding Ins. Co. v. Stein,* 273 F.Supp. 929 (E.D. Pa.1967) (legal remedy for subsequent damages will not suffice when indemnitor refuses to voluntarily comply with surety's demands); *U.S. Fid. & Guar. Co. v. Stanley Contracting, Inc.,* 303 F. Supp.2d 1169 (D. Or. 2004) (court granted specific enforcement term requiring indemnitors to post security in order to protect the surety from future losses); *Bib Construction, Inc. v. Fireman's Ins. Co. of Newark, NJ,* 214 A.D.2d 521, 625 N.Y.S. 2d 550 (N.Y. 1 App. Div.1995) ("[D]amage resulting from failure to give security is not ascertainable, and the legal remedy is therefore inadequate"); THE RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTY, §21 comments i, j and k.

Finally, absent an injunction, FMIC would suffer the harm of having its rights under the *Indemnity Agreement* effectively nullified.  FMIC would be unsecured against claims and loss while the INDEMNITORS would be free to sell, transfer, or conceal their assets to avoid their obligations.  *See Developers Sur. & Indem. Co.,* 2009 WL 3831437, at *2.  By way of example, on or about August 24, 2020, PACIN listed the following real properties for sale with Coldwell Banker Realty: (a) a residential condominium at 6039 Collins Avenue, Apt. 1725, Miami Beach, Florida for $799,000.00 ("Property 1"); and (b) a residential condominium at 9000 S.W. 24th Street, Apt. 212, Miami, Florida for $165,000.00 ("Property 2").  On or about October 14, 2020, PACIN sold Property 2 for $155,000.00.  Thereafter, on October 30, 2020, PACIN commenced efforts to procure the release of a work deck barge owned by PAC COMM which PACIN allegedly sold to a purchaser in the Bahamas.

Needless to say, FMIC would continue to be harmed if the INDEMNITORS are permitted to continue to improperly liquidate and/or dissipate their available assets before a judgment is entered.  FMIC has no adequate remedy at law, and the declaratory relief sought herein constitutes

the only means by which FMIC can secure adequate relief and preservation of its specific contract rights.

### 3.    The Threatened Injury to FMIC Outweighs the Potential Damage the Injunction May Cause the INDEMNITORS

The harm which FMIC would suffer in the absence of a preliminary injunction outweighs any harm that the INDEMNITORS may suffer if the requested injunction is issued.  In the absence of an injunction, FMIC would lose the benefit of the collateral deposit provision within the *Indemnity Agreement* and be demoted to the position of an unsecured creditor.  *See Allied World Specialty Ins. Co. v. Lawson,* 2016 WL 695980 (M.D. Fla.2016) *citing Pa. Beads Corp.,* 983 F. Supp. at 441.  Additionally, without the collateral security deposit, FMIC would have to defend against multiple claims without any security.

While an injunction may subject the INDEMNITORS to financial hardship, it would only obligate them to comply with that which they are contractually obligated.  *See Hanover Ins. Co. v. Holley Const. Co. & Assocs.,* No. 4:11-cv-41 (CDL), 2012 WL 398135, at *6 (M.D. Ga. Feb. 7, 2012) ("Although Defendants may suffer harm as a result of the injunction, this harm is the result of enforcement of an Indemnity Agreement which Defendants entered; an injunction would only require Defendants to do that which they agreed to do.").  Moreover, through the merits of this and/or any related litigation, the INDEMNITORS can seek redress for any monetary harm they may suffer.

Likewise, any harm the INDEMNITORS may suffer is outweighed by the potential injury to FMIC absent an injunction.  *See Developers Sur. & Indem. Co.*, 2009 WL 3831437, at *2.  This is especially true in the instant case given the INDEMNITORS dissipation of assets (e.g. - the recent sale of one of two real properties, and the sale of the work deck barge).

FMIC acknowledges that pursuant to Rule 65(c), *Fed.R.Civ.P.,* security must be posted, "in such sum as the court deems proper, for the payment of such costs and damages as may be

incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."
Nevertheless, "the amount of security required by the [R]ule is a matter within the discretion of
the trial court, and the court may elect to require no security at all." *BellSouth Telecomms., Inc.,
v. MCIMetro Access Transmission Servs., LLC,* 425 F.3d 964, 971 (11th Cir. 2005) (quotation
omitted). "[C]ourts have held that security is not required… when the party seeking the injunction
has a high probability of succeeding in the merits of its claim." *Univ. Books & Videos, Inc. v.
Metro Dade Cnty.,* 33 F. Supp. 2d 1364, 1374 (S.D. Fla. 1999) (citing *People of State of Cal. Ex
rel. Van De Kamp v. Tahoe Reg'l Planning Agency,* 766 F.2d 1319, 1326 (9th Cir.), *amended on
unrelated grounds,* 775 F.2d 998 (9th Cir. 1985)). In addition, "the bond requirement may be
waived if a bond is not requested, or if no evidence is presented that a party will suffer damages
from the issuance of an injunction." *Tancogne v. Tomjai Enters. Corp.,* 408 F. Supp. 2d 1237,
1252 (S.D. Fla. 2005). Irrespective of same, FMIC, in connection with the anticipated issuance of
the relief requested herein, stands ready, willing and able to post such security as may be deemed
necessary by the Court in connection with the issuance of the relief requested herein.

**4. There is No Significant Interest and/or Effect Upon the Public in
Relation to the Instant Motion Other Then the Need for Court's to
Uphold Bargained-for-Contractual Rights Between Parties**

At least two (2) decisions form this Court recognize that surety companies serve an
important public purpose in establishing security in the construction industry, and that the financial
solvency of sureties is a legitimate and important public interest that supports the issuance of
injunctive relief to enforce their indemnity rights. *See Liberty, supra,* at 1305; *Developers Surety
and Indemnity Co. v. Electric Service & Repair, Inc.,* 2009 WL 3831437 at *1 (S.D.Fla. 2009).

**IV. CONCLUSION**

The *Indemnity Agreement* is clear, definitive and certain. The INDEMNITORS are
required to post collateral security to prevent FMIC from incurring any loss or expense under the

*Bonds*.  FMIC has received payment and performance bond claims and is facing potential exposure in excess of $2,040,939.81, as a result of having issued the *Bonds*.

Despite FMIC's demands, the INDEMNITORS have failed to post any collateral security in breach of the *Indemnity Agreement*.  Unless restrained by the Court, the INDEMNITORS will continue to liquidate and/or dissipate their assets.  Florida law firmly establishes that the INDEMNITORS' failure to post collateral security will cause irreparable injury, leaving FMIC without an adequate remedy at law.  Based on the well-settled case law, and the specific facts of this matter, this Court should grant FMIC the relief requested in its *Motion*.

WHEREFORE, FMIC respectfully requests that this Honorable Court enter a *Preliminary Injunction* against the INDEMNITORS, requiring INDEMNITORS to: (a) immediately deposit collateral security with FMIC in the amount of $3,267,387.81; (b) refrain from selling, transferring, alienating or otherwise encumbering any of the INDEMNITORS' assets until such time as the requisite collateral is posted; (c) render to FMIC a full and complete accounting of all assets owned by them or in which they have an interest; (d) immediately permit FMIC to have full access to the IDEMNITORS' books and records, including financial information such as bank and investment account statements and tax returns; (e) reimburse FMIC, together with such other and further relief as this Court deems necessary, just and proper.

DATED this 6th day of November, 2020.

**ETCHEVERRY HARRISON, LLP**
Attorneys for FMIC
150 South Pine Island Road, Suite 105
Ft. Lauderdale, FL 33324
Phone: (954) 370-1681
Fax: (954) 370-1682
Etcheverry@etchlaw.com
Kerbel@etchlaw.com
Service@etchlaw.com
By: */s/ Edward Etcheverry*
Edward Etcheverry, Fla. Bar No.: 856517
Steve Kerbel, Fla. Bar No.: 503541